UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KERRY MILL,<br><br>    Plaintiff,<br><br>    v.<br><br>KMART CORPORATION, et al.,<br><br>    Defendants. | Case No. 14-cv-02749-KAW<br><br>ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY ACTION<br><br>Dkt. No. 14 |

On September 2, 2014, Defendants Kmart Corporation ("Kmart") and Sears Holding Management Corporation ("SHMC") filed a Motion to Compel Arbitration and Stay Action pursuant to the arbitration agreement introduced in 2010 under which participating employees and Defendants waived their right to pursue employment-related claims in court in favor of submitting such disputes to binding arbitration. (Defs.' Mot., Dkt. No. 14 at 3.)

On November 25, 2014, the Court held a hearing. For the reasons set forth below, the Court finds the arbitration agreement enforceable and, accordingly, GRANTS Defendants' Motion to Compel Arbitration and Stay Action.

**I. BACKGROUND**

During the week of April 2, 2012, Kmart introduced an arbitration policy/agreement ("Agreement") under which participating employees and Kmart each waived the right to pursue employment-related claims in court, and, instead, agreed to submit such disputes to binding arbitration. (Decl. of Kaselitz Decl., "Kaselitz Decl.," Dkt. No. 11-2 ¶ 5). The Agreement contains an introduction, which states:

> Under this Agreement, and subject to certain exceptions specified within the Agreement, all employment-related disputes between you ("Associate") and Company that are not resolved informally shall be

> resolved by binding arbitration in accordance with the terms set forth below. This Agreement applies equally to disputes related to Associate's employment raised by either Associate or by Company.
>
> **Accordingly, Associate should read this Agreement carefully, as it provides that virtually any dispute related to Associate's employment must be resolved only through binding arbitration. Arbitration replaces the right of both parties to go to court, including the right to have a jury decide the parties' claims. Also, this Agreement prohibits Associate from filing, opting into, becoming a class member in, or recovering through a class action, collective action, representative action or similar proceeding.**
>
> **If Associate does not wish to be bound by the Agreement, Associate must opt out by following the steps outlined in this Agreement within 30 days of receipt of this Agreement. Failure to opt out within the 30-day period will demonstrate Associate's intention to be bound by this Agreement and Associate's agreement to arbitrate all disputes arising out of or related to Associate's employment as set forth below.**

(Arbitration Agreement, Kaselitz Decl., Ex. A at 1(emphasis in original).) The Agreement further provides:

> Except as it otherwise provides, this Agreement applies, without limitation, to disputes regarding the employment relationship, trade secrets, unfair competition, compensation, pay, benefits, breaks and rest periods, termination, discrimination, or harassment and claims arising under the Uniform Trade Secrets Act, Civil Rights Act of 1964, Americans with Disabilities Act, Age Discrimination in Employment Act, as amended Family and Medical Leave Act, Fair Labor Standards Act, Employee retirement and Income Security Act, Genetic Information Non-Disclosure Act, and any and all state statutes addressing the same or similar subject matters, and all other state or federal statutory and common law claims.

*Id.*

Prior to September 14, 2012, Kmart employees participated in trainings and acknowledged their receipt of various employment policies using both Kmart's My Personal Information ("MPI") portal and the former training system known as the "Online Performance Training System." (Kaselitz Decl. ¶ 7). Once logged into the MPI portal, employees may print any documents or pages viewed in the portal, using Kmart-owned equipment and supplies and at no cost to the employee. *Id.* at ¶ 8. Prior to September 14, 2012, employees were required to complete a series of policy acknowledgements in the MPI portal. *Id.* at ¶ 9. Prior to acknowledging the receipt of the Agreement, the link to the Agreement appears in red-colored font

on the "Policy Acknowledgements" page. *Id.* at ¶ 10. Upon clicking the link for the Agreement acknowledgement, the employee is brought to a page containing four additional links, labeled (i) "Arbitration Policy/Agreement (PDF)"; (ii) "Arbitration Policy/Agreement (Text)"; (iii) "Opt Out form Action is required to protect your legal rights to sue the Company in court and/or to participate in any way in a class action, collective action or representative action"; and (iv) "Acknowledgement receipt of the Arbitration Policy/Agreement." *Id.* at ¶ 11. After reviewing the Agreement and Opt Out form, employees are asked to acknowledge their receipt of the Agreement by clicking on the "Acknowledge receipt of the Arbitration Policy/Agreement" link. *Id.* at ¶ 12. Upon clicking on the acknowledgement link, the employee receives the following message on the acknowledgement page:

> **By clicking below, I acknowledge that I have reviewed and agreed to the terms and conditions set forth in the Arbitration Policy/Agreement. I also understand that I may change my mind and opt out of the Agreement within 30 days of today's date by returning the Arbitration Policy/Agreement Opt Out form located at the end of the Agreement.**

*Id.* at ¶ 13 (emphasis in original). To submit their acknowledgement, employees are required to click on the "Yes" button and then click "Submit." *Id.* at ¶ 14.

Plaintiff Kerry Mill was hired by Kmart on September 14, 2011. (Kaselitz Decl. ¶ 19.) Plaintiff received the Agreement during the week of April 2, 2012. *Id.* at ¶ 20. On April 21, 2012, Plaintiff acknowledged receipt of the Agreement by clicking "Yes" and "Submit" on the Agreement's acknowledgement page. (Kaselitz Decl. ¶¶ 21-22, Ex. C.) Following her review and acceptance of the Agreement, Plaintiff had a 30-day period during which she could revoke her acceptance of the Agreement. (Kaselitz Decl. ¶ 23.) Plaintiff did not revoke her acceptance of the Agreement within the 30-day period, nor did she attempt to do so at any time thereafter. *Id.* at ¶ 24. Other employees did opt out. (*See* Kaselitz Decl., Ex. D.)

On May 13, 2014, Plaintiff filed a class action complaint in Alameda County Superior Court alleging violations of California wage and hour laws. Thereafter, it was removed to federal court. Plaintiff filed an amended complaint to add a claim for civil penalties under California's Private Attorneys General Act ("PAGA"), California Labor Code § 2698 *et seq.* (Am. Compl.,

3

Dkt. No. 5-1.)

On September 2, 2014, Defendants filed a motion to compel arbitration and to stay the action. On September 22, 2014, the Court granted the parties' stipulated briefing schedule for the instant motion. On September 23, 2014, Plaintiff filed her opposition. (Pl.'s Opp'n, Dkt. No. 18.) On October 3, 2014, Defendants filed their reply. (Defs.' Reply, Dkt. No. 19.) On October 6, 20, and 23, Defendants filed notices of supplemental authority. (Dkt. Nos. 20-22.)

On November 25, 2014, the Court held a hearing on the motion to compel arbitration.

## II.  LEGAL STANDARD

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of a contract." 9 U.S.C. § 2. "Once the court has determined that an arbitration agreement relates to a transaction involving interstate commerce, thereby falling under the FAA, the court's only role is to determine whether a valid arbitration agreement exists and whether the scope of the dispute falls within that agreement." *Ramirez v. Cintas Corp.*, No. C 04-00281 JSW, 2005 WL 2894628, at *3 (N.D. Cal. Nov. 2, 2005) (citing 9 U.S.C. § 4; *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)).

Generally, in deciding whether a dispute is subject to an arbitration agreement, the Court must determine: "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). As such, the Court's role "is limited to determining arbitrability and enforcing agreements to arbitrate, leaving the merits of the claim and any defenses to the arbitrator." *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 479 (9th Cir. 1991).

The FAA reflects a "liberal federal policy favoring arbitration agreements." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). An arbitration agreement may only "be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility LLC v. Concepcion*, 131 S.

Ct. 1740, 1746 (2011) (quoting *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). Therefore, courts may not apply traditional contractual defenses like duress and unconscionability, in a broader or more stringent manner to invalidate arbitration agreements and thereby undermine FAA's purpose to "ensur[e] that private arbitration agreements are enforced according to their terms." *Id.* at 1748 (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989). "When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA." *Concepcion*, 131 S. Ct. at 1747 (citing *Preston v. Ferrer*, 552 U.S. 346, 353 (2008)).

If the court is satisfied "that the making of the arbitration agreement or the failure to comply with the agreement is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. The action should be stayed "until such arbitration has been had in accordance with the terms of the agreement . . . ." 9 U .S.C. § 3.

## III. DISCUSSION

Defendants seek to compel arbitration consistent with the Agreement electronically signed by Plaintiff. Plaintiff contends that the agreement is unenforceable on the grounds that it is unconscionable.

### A. Existence of a Valid Arbitration Agreement

In deciding whether to compel arbitration, the Court must "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (quotation omitted). "If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

In making this determination, the Court "should apply ordinary state-law principles that govern the formation of contracts." *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 11656, 1170 (9th Cir. 2003). Under California law, a valid contract requires: (1) parties capable of contracting; (2) mutual consent; (3) a lawful object; and (4) sufficient cause or consideration. Cal. Civ. Code §

5

1550. Plaintiff does not argue that a contract does not exist, but rather that it is unenforceable.

An arbitration agreement cannot be invalidated for unconscionability absent a showing of both procedural and substantive unconscionability. *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal.4th 83, 114 (2000). The procedural element focuses on oppression or surprise due to unequal bargaining power; the substantive element focuses on overly harsh or one-sided results. *Kilgore v. Keybank, Nat'l Ass'n*, 673 F.3d 947, 963 (9th Cir. 2012) (quoting *Armendariz*, 24 Cal.4th at 89, 99). The party challenging the arbitration agreement bears the burden of establishing unconscionability. *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal.4th 223, 247, 145 Cal.Rptr.3d 514, 282 P.3d 1217 (2012).

At the hearing, the parties agreed that the FAA governs and that the Agreement encompasses all of the claims at issue. Plaintiff, however, contends that the Agreement is not valid and enforceable because the Agreement is unconscionable under California law.

### B. The Agreement satisfies *Armendariz*'s requirements

Plaintiff contends that the Agreement's silence as to which party pays the "costs unique to arbitration" makes it generally unconscionable under *Armendariz v. Found. Health Psychcare Servs., Inc.,* because it only provides for the payment of the arbitrator's fees. (Pl.'s Opp'n at 7.) In *Armendariz,* the California Supreme Court held that a mandatory arbitration agreement, in order to be lawful, "must meet certain minimum requirements, including neutrality of the arbitrator, the provision of adequate discovery, a written decision that will permit a limited form of judicial review, and limitations on the costs of arbitration." *Armendariz v. Found. Health Psychcare Servs., Inc.,* 24 Cal. 4th 83, 91 (2000).

Defendants argue that *Armendariz*'s requirements do not apply post-*Concepcion*, but even if they do, the Agreement satisfies the requirement that Kmart bear costs unique to arbitration, because it provides that Kmart will pay all fees that it is legally required to pay as an employer under state law. (Defs.' Reply at 5-6; Arbitration Agreement § 6(c).) In fact, the *Armendariz* court held the employment arbitration agreement "impliedly obliges the employer to pay all types of costs that are unique to arbitration." 24 Cal. 4th at 113.

As an initial matter, it is unclear whether *Armendariz* even applies, as this is not a

6

1 mandatory arbitration agreement, because Plaintiff had an opportunity to opt out without facing
2 any adverse employment action. The Court, however, need not make a legal determination of
3 *Armendariz*'s applicability at this juncture.

4 Nonetheless, Plaintiff could not articulate, in either her opposition or at the hearing, any
5 "unique costs" other than the arbitrator's fees. Further, the Agreement explicitly provides that
6 "[e]ach party shall pay the fees for his, her or its own attorneys, and any other costs that would
7 otherwise be borne by a party were the claims brought in court, subject to any remedies to which
8 that party may later be entitled under applicable law." (Arbitration Agreement § 7.) Since most
9 costs in arbitration are also borne when claims are brought in court, and Plaintiff could not
10 specifically identify any "unique costs," she has not satisfied her burden.

11 In light of the above, as the Agreement provides, Kmart is responsible for all costs unique
12 to arbitration if required by California law, so, in this regard, the Agreement is valid.

### C. Unconscionability

14 "Under the FAA savings clause, state law that arose to govern issues concerning the
15 validity, revocability, and enforceability of contracts generally remains applicable to arbitration
16 agreements." *Kilgore,* 718 F.3d at 1058 (quotation omitted). Thus, under California law, an
17 arbitration agreement may only be invalidated for unconscionability if it is both procedurally and
18 substantively unconscionable. *Id.* (citing *Armendariz*, 24 Cal. 4th at 114). "[T]he more
19 substantively oppressive the contract term, the less evidence of procedural unconscionability is
20 required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz*, 24
21 Cal. 4th at 114. "[T]he party opposing arbitration has the burden of proving the arbitration
22 provision is unconscionable." *Higgins v. Superior Court*, 140 Cal.App.4th 1238, 1249 (2006)
23 (quotation omitted).

#### 1. Procedural Unconscionability

25 "Procedural unconscionability focuses on the factors of surprise and oppression." *Kilgore*,
26 718 F.3d at 1059 (quotation omitted). Plaintiff claims that the Agreement is procedurally
27 unconscionable for three reasons: (1) the Agreement was an adhesion contract, such that Plaintiff
28 did not have an opportunity to negotiate its terms; (2) the Agreement did not attach the rules of

7

1   arbitration; and (3) that the Agreement violates the E-Sign Act.

        a.  <u>Whether it was a contract of adhesion rendering it unconscionable</u>

Plaintiff contends that the Agreement in unconscionable, because she "was not given an opportunity to negotiate the terms of the Agreement allegedly presented to her." (Pl.'s Opp'n at 9.) Under California law, "it is procedurally unconscionable to require employees, as a condition of employment, to waive their right to seek redress of grievances in a judicial forum." *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1172 (9th Cir. 2003) (citing *Armendariz*, 24 Cal. 4th at 114–15).

"[I]f an employee has a meaningful opportunity to opt out of the arbitration provision when signing the agreement and still preserve his or her job, then it is not procedurally unconscionable." *Davis*, 485 F.3d at 1073 (citing *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002); *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1200 (9th Cir. 2002)). Here, Plaintiff was given thirty days to opt out of the Agreement by mailing or faxing a one-page form. (Kaselitz Decl. ¶¶ 16-17; Arbitration Agreement at 7). The Agreement was not combined with any other employment terms, conditions or agreements, and clearly notified the employee, in bold font, that opting out would not result in any adverse employment action. (Arbitration Agreement § 11.) Thus, the Court finds that the opportunity to opt-out was not "buried in fine print ..., but was instead ..., clearly labeled, in boldface." *Kilgore*, 718 F.3d at 1059 (no procedural unconscionability when plaintiffs had time to reject the arbitration clause and the clause was not "buried in fine print in the Note, but was instead in its own section, clearly labeled, in boldface"); *see also Velazquez v. Sears, Roebuck & Co.*, No. 13-CV-00680-WQH-DHB, 2013 WL 4525581, at *6 (S.D. Cal. Aug. 26, 2013).

Plaintiff could have opted out, thereby rejecting all of the terms of the Agreement, without adversely effecting her employment. In fact, other Kmart employees did opt out. (Kaselitz Decl. ¶¶ 24-25, Ex. D.) Thus, the Agreement is not procedurally unconscionable.

        b.  <u>Whether Defendant failed to provide the rules of arbitration</u>

Plaintiff argues that Defendants' failure to provide Plaintiff with the arbitration rules at the time of electronic signing renders the Agreement unenforceable. (Pl.'s Opp'n at 9-10.) Defendants contend that they did provide the rules, because the Agreement had a hyperlink to the

1  arbitration rules. (Def.'s Reply at 9; Arbitration Agreement § 7.) In addition to the hyperlink, the
2  Agreement also provided: "If you are unable to access or print the JAMS rules, you may obtain a
3  printout of the rules from your Human Resources representative or from your manager."
4  (Arbitration Agreement § 7.) Accordingly, the arbitration rules were provided.

5        c.  <u>Whether the Agreement's format violated the E-Sign Act</u>

6      Plaintiff contends that the online portal's failure to comply with the E-Sign Act renders the
7  Agreement void and unenforceable. (Pl.'s Opp'n at 13.) As an initial matter, Defendants argue
8  that the E-Sign Act's purpose is to effectuate, rather than to invalidate, electronic agreements.
9  (Defs.' Reply at 9.) Courts have uniformly applied the E-Sign Act to subsequent interpretations of
10 the FAA's written provision requirement, finding that the E-Sign Act "likely precludes any flat
11 rule that a contract to arbitrate is unenforceable . . . solely because its promulgator chose to use
12 [an electronic] medium to effectuate the agreement." *Campbell v. Gen. Dynamics Gov't Sys.*
13 *Corp.*, 407 F.3d 546, 556 (1st Cir. 2005); *see also Specht v. Netscape Commc'ns Corp.,* 306 F.3d
14 17, 26 n. 11 (2d Cir. 2002); *Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 722
15 F.3d 591, 602 (4th Cir. 2013). Thus, as applied, the E-Sign Act would serve to validate the
16 Agreement, because to hold otherwise, simply because it was entered into electronically, would
17 thwart the congressional intent behind the E-Sign Act.

18     Additionally, Plaintiff cites § 7001(c)(1)(B)(iv) as requiring that Defendants inform
19 Plaintiff of her right to obtain a paper copy of the Agreement. (Pl.'s Opp'n at 12.) Subsection (c),
20 however, pertains to "consumers," which are defined as "individual[s] who obtain[], through a
21 transaction, products or services which are used primarily for personal, family, or household
22 purposes." 15 U.S.C. § 7006(1). Defendants argue that Plaintiff is not a "consumer" within the
23 meaning of the Act, because she is an employee. (Defs.' Reply at 9.) At the hearing, Plaintiff
24 conceded that she was not a consumer under the E-Sign Act.

25     Accordingly, Defendants' alleged failure to comply with the E-Sign Act does not render it
26 procedurally unconscionable, because, if anything, the E-Sign Act validates the electronic means
27 Defendants utilized to enter into the Agreement.
28 ///

### 2. Substantive Unconscionability

Plaintiff contends that the Private Attorney General Act ("PAGA") Waiver is both substantively unconscionable and unenforceable in light of the California Supreme Court's ruling in *Iskanian v. CLS Transportation Los Angeles, LLC*, 59 Cal. 4th 348, 384 (2014), which held that such waivers were unenforceable as a matter of state law. (Pl.'s Opp'n at 3-5.) PAGA permits plaintiffs to bring representative claims on behalf of other aggrieved employees for an employer's California Labor Code violations for the purpose of collecting civil penalties. Cal. Lab. Code § 2699, *et seq*. PAGA permits employees to seek penalties for labor law violations "that could otherwise only be assessed by California's Labor and Workforce Development Agency." *Fardig v. Hobby Lobby Stores Inc.*, No. SACV 14-00561 JVS, 2014 WL 4782618, at *2 (C.D. Cal. Aug. 11, 2014) (quoting *Cunningham v. Leslie's Poolmart, Inc.*, 2013 WL 3233211, at *5 (C.D. Cal. June 25, 2013). Most federal district courts within the state, however, have held that a waiver of PAGA claims is enforceable because it is preempted by the FAA.

In *Concepcion*, the United States Supreme Court held that "a state law rule, however laudable, may not be enforced if it is preempted by the FAA." 131 S.Ct. at 1748. The two primary goals of the FAA are the "enforcement of private agreements" and the "encouragement of efficient and speedy dispute resolution." *Id.* There are two situations where a state law rule is preempted by the FAA. *Kilgore*, 673 F.3d at 957 (citing *Concepcion*, 131 S.Ct. at 1747–48). First, "[w]hen state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA." *Id.* (citing *Concepcion*, 131 S.Ct. at 1747). Second, "when a doctrine normally thought to be generally applicable, such as duress or, as relevant here, unconscionability, is alleged to have been applied in a fashion that disfavors arbitration. . . . a court must determine whether the state law rule 'stand[s] as an obstacle to the accomplishment of the FAA's objectives,' which are principally to 'ensure that private arbitration agreements are enforced according to their terms.'" *Id.* (citing *Concepcion*, 131 S.Ct. at 1748). "If the state law rule is such an obstacle, it is preempted." *Id.*

Since *Iskanian,* at least three federal courts have addressed whether the FAA preempts California's rule prohibiting the waiver of representative PAGA claims, and all have concluded

10

that it does. *See Ortiz v. Hobby Lobby Stores, Inc.*, No. 2:13-CV-01619, 2014 WL 4961126, at *9 (E.D. Cal. Oct. 1, 2014); *Langston v. 20/20 Companies, Inc.,* No. EDCV 14-1360 JGB SPX, 2014 WL 5335734, at *7 (C.D. Cal. Oct. 17, 2014); *Chico v. Hilton Worldwide, Inc.*, No. CV 14-5750-JFW SSX, 2014 WL 5088240, at *12 (C.D. Cal. Oct. 7, 2014). Thus, "[i]n accordance with *Concepcion*, [] the FAA likewise preempts California's rule against PAGA waivers." *Chico* 2014 WL 5088240, at *13. Accordingly, the PAGA waiver is not substantively unconscionable.

In light of the foregoing, the Agreement is valid and enforceable.

### D. Stay

Defendants have moved for a stay of this case pending the outcome of the arbitration proceedings. Under the FAA:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in the proceeding with such arbitration.

9 U.S.C. § 3. Here, the Court finds that the claims raised by Plaintiff in the Complaint are referable to arbitration pursuant to the Agreement. Accordingly, this action is stayed pursuant to 9 U.S.C. § 3.

## IV. CONCLUSION

In light of the foregoing, the Court GRANTS Defendants Kmart Corporation and Sears Holding Management Corporation's Motion to Compel Arbitration and Stay Action. Thus, pursuant to 9 U.S.C. § 3, this action is STAYED pending arbitration. The parties shall file a joint status report on or before May 26, 2015, and every three months thereafter until the arbitrator issues a decision.

IT IS SO ORDERED.

Dated: November 26, 2014

_____
KANDIS A. WESTMORE
United States Magistrate Judge

11